**KELL v. ZERMATTEN et al.**
**AXTELL et al. v. KELL.**
No. 12344.

United States District Court
S. D. California, C. D.
Jan. 24, 1952.

Owen M. Murphy and William P. Crawford, Long Beach, Cal., for libelants.

Allan F. Bullard San Pedro, Cal., for respondents and cross-libelants.

YANKWICH, Chief Judge.

Evidence oral and documentary was introduced; the cause was argued orally and submitted, whereupon the Court rendered its decision from the bench.

Thereafter formal Findings of Fact and Conclusions of Law were waived by stipulation of counsel in open court; however inasmuch as the libelant has subsequently indicated his desire to prosecute an appeal in this cause, and Findings of Fact and Conclusions of Law are desired by the parties, and the Court being fully advised in the premises, it now makes its

Findings of Fact
as follows:

I

At the times mentioned in the Libel, the libelant George Kell was an American citizen, residing in the City of Long Beach, State of California, and was the owner of the fishing vessel "Newcomer", a vessel of the United States of America, 52 feet in length and of 59 gross and 55 net tons, and of a reasonable market value in sound condition of not less than $49,000.

II

At the times material hereto, the respondent and cross-libelant, Earl C. Axtell, Jr., was master of the American fishing vessel "Jesse A", which vessel was an oil screw fishing vessel approximately 38 feet in length and of the reasonable value of $16,500, or thereabouts. Said vessel was owned by Earl C. Axtell. The respondent and cross-libelant Earl C. Axtell, Jr. was sued in the Libel under the fictitious name of John Doe and thereafter appeared on behalf of himself and on behalf of the owner thereof, the said Earl C. Axtell, and of Martin Axtell, crew member of said vessel.

III

At the times material hereto, the respondent and cross-libelant Laur Koozmin was the owner of the American fishing vessel "Paloma", a gas screw fishing vessel, approximately 38 feet in length and of the reasonable market value of $15,000, or thereabouts. Laur Koozmin did not appear personally at the trial of this cause, but was represented by his attorney in fact, George Rogwald, formerly known as George Ikonokoff, who was one of the members of the crew of the vessel "Paloma" at the times material hereto. The Cross-Libel of Laur Koozmin was maintained for the benefit of himself as owner of said vessel, and for the benefit of the crew members of said vessel "Paloma", namely the said George Rogwald, William Ushin and Fred Burnett.

IV

On March 16, 1950, the vessel "Newcomer" was en route from Cape San Lucas, Baja, California, to San Pedro, California, with a partial cargo of between 20 and 25 tons of frozen yellowfin tuna on board. The going price and the market value of yellowfin tuna delivered in sound condition at San Diego, California, or San Pedro, California, was the sum of $310 per ton. The "Newcomer" put in to a small fishing port or town at Cedros Island off the coast of Baja, California, known as The Village, approximately 330 miles South East of San Diego, California, for the purpose of delivering a passenger.

On March 16, 1950, at about 12:30 p.m., at which time the "Newcomer" was approximately four miles from The Village, Cedros Island, and under way, fire broke out in the engine room of the vessel. The engine room of the vessel quickly filled with flames and smoke. There was no adequate means on board the vessel to extinguish the fire. The vessel was equipped with a CO2 fire fighting system. This system was inoperable as the vessel had experienced another fire earlier on the same fishing voyage, and the CO2 gas sup-

ply had been exhausted in extinguishing the former fire.

The libelant George Kell, master of the "Newcomer", made some effort to extinguish the blaze with hand fire extinguishers, but because of the intensity of the flames, heat and smoke, he could not approach near enough to the fire to effectively engage or subdue it.

There was grave danger of explosion because of the proximity of the vessel's ammonia receiver to the location of the fire, which reasonably caused the master to believe that it was unsafe to remain on board the vessel.

The libelant accordingly gave orders to abandon the vessel, and the crew of the "Newcomer", consisting of five men in addition to the libelant, did immediately enter the vessel's skiff and abandon the "Newcomer".

The libelant Captain Kell was unable to request assistance by radio for the reason that the vessel's radio was found to be inoperable after the fire was discovered. At the time Captain Kell and his crew abandoned the "Newcomer", Captain Kell believed, and rasonably so, that there was no opportunity of saving the vessel, and that the vessel, together with its cargo, would shortly become an absolute total loss.

The "Newcomer" fire was observed by the personnel on board the vessels "Paloma" and "Jesse A", which were then lying at anchor at The Village, Cedros Island, and said two vessels, together with a third small fishing vessel known as the "Lyl Evelyn", immediately proceeded to the assistance of the "Newcomer", and arrived at the "Newcomer" in approximately half an hour, or at approximately 1:00 o'clock p. m., March 16, 1950.

On arriving at the location of the "Newcomer", the crew of the "Newcomer" was found to be safe and the "Newcomer" was observed to be heavily involved with fire, particularly from approximately midships forward, the cabin and superstructure was a mass of flames, with a resulting area of intense heat in and about the vessel.

Captain Kell first boarded the small fishing vessel "Lyl Evelyn" and then proceeded from the "Lyl Evelyn" to the vessel "Jesse A", went aboard the "Jesse A", and there had a discussion with Earl C. Axtell, Jr., and Martin Axtell with reference to the fire on the "Newcomer".

Captain Kell advised the Axtells that he considered that the "Newcomer" was an absolute total loss and that by reason of the general conditions which obviously existed on the "Newcomer", together with imminent danger of violent explosions on said vessel, it was unsafe for anyone to attempt to board the "Newcomer" in an attempt to fight the fire or to save the vessel.

Captain Kell further stated to the Axtells that there was a cargo of fish on the "Newcomer" and that if the vessels "Jesse A" and "Paloma" should be successful in saving any of the fish, that they had his permission to do so for their own account, as he had abandoned the fish. Captain Kell's statements were understood by the Axtells to mean that any fish which they might be able to save would be the sole and absolute property of the persons saving the fish.

Thereafter the vessel "Jesse A" maneuvered close to the burning "Newcomer", and Martin Axtell went aboard the "Newcomer" with a line from the "Jesse A". The "Jesse A" proceeded to tow the "Newcomer" toward shallow water near the beach of Cedros Island.

Martin Axtell remained on board the "Newcomer" and proceeded to fight the fire on the "Newcomer" with a hand bucket, and in this activity Martin Axtell was joined and assisted by an unidentified member of the crew of the vessel "Lyl Evelyn".

The "Jesse A" succeeded in towing the "Newcomer" into shallow water and then rigged a fire hose and proceeded to play a stream of water upon the fire in the "Newcomer", which fire continued to burn with considerable intensity.

The vessel "Paloma" then approached the "Newcomer", and members of the "Paloma" crew, namely William Ushin and Fred Burnett, boarded the "Newcomer" and assisted in fire fighting operations.

The activity of Martin Axtell in boarding the "Newcomer" with a line and in thereafter fighting the fire by hand bucket until a fire hose could be rigged, involved substantial personal danger and hazard to the said Martin Axtell.

The activity of William Ushin and Fred Burnett in assisting in fighting the fire on the "Newcomer" was accompanied with some personal risk and hazard. All three of the men were exposed to flame, smoke and soot and suffered recurring attacks of sickness and nausea as a result of their work on the "Newcomer". The vessel "Jesse A" was exposed to substantial risk and hazard in connection with placing Martin Axtell on board the "Newcomer" and in towing the "Newcomer" into shallow water, and thereafter both vessels "Jesse A" and "Paloma" were exposed to some hazard and risk as efforts to subdue the fire on the "Newcomer" were continued.

On arrival of the "Newcomer" in shallow water, the vessel "Lyl Evelyn" came alongside the "Newcomer" and, pursuant to some agreement or arrangement made between Captain Kell and the master of the "Lyl Evelyn", which agreement or arrangement is not material to this cause for the reason that the owners, master and crew of the "Lyl Evelyn" have not appeared herein, a quantity of fish was transferred from the "Newcomer" to the "Lyl Evelyn". The quantity of fish so discharged from the "Newcomer" to the "Lyl Evelyn" was approximately three or four tons.

A United States Coast Guard rescue plane arrived at The Village, Cedros Island, for the purpose of rescuing Captain Kell and his crew at approximately 5:30 p. m. on March 16, 1950. Captain Kell and his crew were taken from the vicinity of the "Newcomer" to the Coast Guard plane by the vessel "Paloma". Captain Kell and his crew boarded the Coast Guard plane and were by them returned to San Diego, California. Captain Kell then proceeded from San Diego to San Pedro, California, and reported the circumstances to his underwriters.

At the time Captain Kell left the vicinity of the "Newcomer", the vessel was involved by fire and it was believed by Captain Kell and others present that the vessel would, in all probability, sink and become a total loss, and that the only interest which might be saved therefrom was such quantity of fish which might be removed from the vessel to the "Lyl Evelyn" and to the vessels "Jesse A" and "Paloma". In this connection Captain Kell advised his underwriters upon his return to San Pedro that at the time the Coast Guard plane arrived, the forward one-half of the vessel had burned to the water line, and that it was his opinion that the vessel would sink within the hour.

## VI

Subsequent to Captain Kell's departure, fire fighting by means of hose and bucket were continued by the crews of the vessel "Jesse A" and "Paloma", and the transfer of fish from the "Newcomer" to the "Lyl Evelyn" continued.

At approximately 9:00 o'clock p. m. on March 16, 1950, said crews had reduced the fire on the vessel to a point where flames were no longer apparent in large quantities. Thereafter there were isolated and sporadic outbreaks of fire which were subdued as they appeared. It then appeared to the masters and crews of the vessels "Jesse A" and "Paloma" that the hull of the "Newcomer" had not been damaged by fire to an extent which would probably cause the vessel to sink, that the principal portions of the "Newcomer" consumed by fire were the cabin and superstructure, and that there was a reasonable probability that the "Newcomer" itself might be successfully maintained afloat and salvaged and repaired. Thereafter the vessels "Jesse A" and "Paloma" and masters and crews directed their efforts primarily to the salvaging and preservation of the "Newcomer" and secondarily to the salvaging of the cargo of fish.

The vessels "Jesse A" and "Paloma" proceeded to then tow the "Newcomer" to The Village at Cedros Island, a distance of approximately four miles, and there

anchored the "Newcomer" in a safe anchorage with the vessels "Jesse A" and "Paloma" tied alongside. A watch was established for the constant observation of the vessel during the remainder of the night. The vessel was in a somewhat water logged and cranky condition by reason of the water which was introduced into her hull in connection with fire fighting operations; however, the vessel was not taking additional water through any hull openings.

## VII

On the following day, March 17, 1950, a further inspection and survey of the "Newcomer" by the crews of the vessels "Jesse A" and "Paloma" confirmed that the vessel might be salvaged and taken to a safe port for repair. Necessary steps for the preservation of the "Newcomer" included:

(1) pumping out the vessel;

(2) removal of the cargo of fish as otherwise same would soon decay and putrefy, creating an intolerable working condition on said vessel, and making it impossible to operate pumps, and also for the purpose of lightening the vessel and increasing her freeboard;

(3) providing temporary protection and cover for the forward portion of the vessel which was burned out and open to the elements;

(4) cleaning the vessel and putting her in seaworthy condition for a tow to a safe port.

The masters and crews of the vessels "Jesse A" and "Paloma" proceeded with these items of necessary work. Arrangements were made with the fishing vessel "Sunderland" to assist in pumping the "Newcomer", and in discharging cargo. There were no facilities available at Cedros Island in the way of spare pumps or tarpaulins, and a portable electric pump and tarpaulin were ordered by radio from San Diego.

## VIII

The masters and crews of the vessels "Jesse A" and "Paloma", with the assistance of the pumping equipment on the vessel "Sunderland", proceeded to discharge fish from the "Newcomer" to the vessels "Jesse A", "Paloma" and "Sunderland".

A quantity of approximately 10 tons of fish was transferred to the vessels "Jesse A" and "Paloma". An unspecified additional quantity of fish was transferred to the vessel "Sunderland".

All hands worked continuously at discharging fish on March 17, 18, and 19, 1950, at which time substantially all of the fish had been removed from the "Newcomer". The work of discharging fish was hard and unpleasant work, as the fish was contaminated by soot and ashes, and each separate fish was hand washed in the process.

## IX

On March 20, 1950, Captain Kell, accompanied by Arthur de Fever, insurance surveyor for the "Newcomer's" hull underwriters, arrived at the "Newcomer" by plane from San Diego. Mr. de Fever inspected the hull of the "Newcomer" and discussed further salvage operations, and the return of the "Newcomer" to San Pedro, California. Mr. de Fever instructed the masters of the vessels "Paloma" and "Jesse A", not to attempt to accomplish the tow of the "Newcomer" and further advised that the personnel of the "Jesse A" and "Paloma" might proceed to ready the "Newcomer" for a tow, which work would include cleaning out the hull of the vessel and removing the debris and remaining small quantity of fish therefrom, so that it would be possible to thereafter operate the bilge pump in the vessel and to proceed to rig the portable pump which had been ordered from San Diego and to secure canvas tarpaulins over the hull of the vessel to keep out the elements while the prospective tow was under way.

The work so outlined was accomplished beginning March 21, 1950 and continued until March 26, 1950, at which time the work was completed. The "Newcomer" was then ready for the tow to San Pedro. A commercial tug arrived at the scene on March 26, 1950, and immediately took the "Newcomer" in tow, and proceeded to San Pedro, California.

## X

During the course of salvage operations the vessel "Paloma" sustained minor hull damage incident to chafing and bumping

against the "Newcomer", which was repaired by the owner at a reasonable cost of $250. The "Jesse A" sustained similar damage which was repaired by the owner at a reasonable cost of $250. Captain Axtell of the "Jesse A" also received out-of-pocket expense for necessary materials and supplies consumed, and radio and telephone charges in the sum of $135.

## XI

The salved value of the "Newcomer" at San Pedro, California, was the sum of not less than $14,000. The salved value of that portion of the cargo of fish salved and sold by the vessels "Jesse A" and "Paloma" at San Diego, California, was the sum of $3,200.

## XII

Salvage services of a high degree of merit were rendered by the vessels "Jesse A" and "Paloma", and their masters and crews. The "Newcomer" was in peril of becoming a total loss together with her cargo, and would have become a total loss but for the prompt, timely and voluntary services rendered by the said salving vessels and parties. The masters and crews of the "Jesse A" and "Paloma" acted entirely in good faith throughout the salvage operations. The masters and crews of the vessels "Paloma" and "Jesse A" did not strip the "Newcomer" or pilfer or embezzle or wrongfully appropriate any portion of the "Newcomer", her equipment, engines, tackle, tools or paraphernalia as alleged in the Libel, or at all.

## XIII

Cross-libelants, owners, masters and crews of the vessels "Jesse A" and "Paloma" are entitled to salvage awards against the libelant as owner of the "Newcomer". Upon considering the several material factors involved in determining the reasonable amount of salvage awards, namely: the labor expended by the salvors in rendering the salvage service; the promptitude, skill and energy displayed by the salvors; the value of the property employed by the salvors, and the risk to which it was exposed, together with the personal risk incurred by the salvors; the value of the property saved and the degree of danger to which it was exposed, the Court finds that a reasonable salvage award to cross-libelant Laur Koozmin, on behalf of the vessel "Paloma", its owner, master, and crew, is the sum of Three Thousand Dollars ($3,000). To this sum is added the sum of Two Hundred Fifty Dollars ($250) as reimbursement for damages and expense incurred, making a total award of Three Thousand Two Hundred Fifty Dollars ($3,250). The cross-respondent is entitled to credit in the amount of One Thousand Six Hundred Dollars ($1,600) upon the total award. This credit, upon stipulation of counsel, represents the amount to be charged to the "Paloma" interests from the proceeds of the sale of fish. The net award to cross-libelant Laur Koozmin is the sum of One Thousand Six Hundred Fifty Dollars ($1,650). This award is apportioned in the amount of Eight Hundred Ten Dollars ($810) to Laur Koozmin, owner of the vessel "Paloma", and represents 40% of the net award for salvage services, plus reimbursement for damages and expense. The remaining 60% of said net award is apportioned equally to George Rogwald, William Ushin and Fred Burnett, as members of the crew of said vessel "Paloma", and in the amount of Two Hundred Eighty Dollars ($280) each.

The court finds that a reasonable award to cross-libelant Earl C. Axtell, Jr., for the benefit of the owner, master and crew of the vessel "Jesse A", is the sum of Three Thousand Five Hundred Dollars ($3,500), plus the sum of Three Hundred Eighty-Five Dollars ($385) for damage and expense incurred, making a total award of Three Thousand Eight Hundred Eighty-Five Dollars ($3,885). The cross-respondent is entitled to credit in the amount of One Thousand Six Hundred Dollars ($1,-600) upon the total award. This credit, upon stipulation of counsel, represents the amount to be charged to the "Jesse A" interests from the proceeds of the sale of fish. The net award to cross-libelant Earl C. Axtell, Jr., is the sum of Two Thousand Two Hundred Eighty-Five Dollars ($2,-285). This net award is apportioned in the amount of One Thousand One Hundred Forty-Five ($1,145) to cross-libelant Earl

C. Axtell, Jr., as trustee for Earl C. Axtell, owner of said vessel "Jesse A", and represents 40% of said net award plus reimbursement for damage and expense. The remainder of 60% of said net award is apportioned to Earl C. Axtell, Jr., and Martin Axtell, crew members of said vessel "Jesse A", in equal proportions and in the sum of Five Hundred Seventy Dollars ($570) each.

### XIV

The court finds that the allegations of the Libel with respect to the respondents Louis Zermatten, Laur Koozmin and Earl C. Axtell, Jr., are unproved and are therefore found to be untrue, and that the allegations in the Cross-Libel of Louis Zermatten are unproved and are therefore found to be untrue.

Being fully advised in the premises, the Court makes the following:

## Conclusions of Law

### I

The libelant George Kell shall have and recover nothing by reason of the Libel herein as against the respondents Louis Zermatten, Laur Koozmin and Earl C. Axtell, Jr.

### II

The cross-libelant Louis Zermatten shall have and recover nothing as against the cross-respondent George Kell.

### III

The cross-libelant Laur Koozmin, for the benefit of himself as owner of the vessel "Paloma", and for the benefit of George Rogwald, William Ushin and Fred Burnett, members of the crew of said vessel "Paloma" shall have and recover from the cross-respondent George Kell the sum of One Thousand Six Hundred Fifty Dollars ($1,650), which sum is apportioned as follows:

To Laur Koozmin $810;

to George Rogwald $280;

to William Ushin $280; and

to Fred Burnett $280.

Said sums to bear interest at the rate of Seven per cent (7%) per annum from the date of entry of Final Decree until paid.

### IV

Cross-libelant Earl C. Axtell, Jr., for the benefit of Earl C. Axtell as owner of the vessel "Jesse A", and for the benefit of Earl C. Axtell, Jr., and Martin Axtell, members of the crew of the vessel "Jesse A", have and recover from the cross-respondent George Kell, the sum of Two Thousand Two Hundred Eighty-Five Dollars ($2,285), which sum is apportioned as follows:

To Earl C. Axtell, Jr., as trustee for Earl C. Axtell, owner of said vessel "Jesse A", the sum of $1,145;

to Earl C. Axtell, the sum of $570;

to Martin Axtell, the sum of $570.

Said sums to bear interest at the rate of Seven per cent (7%) per annum from the date of entry of Final Decree until paid.

### V

The cross-libelant Earl C. Axtell, Jr., and Laur Koozmin have and recover their costs of suit from the cross-respondent George Kell.